Lauren **FINNEGAN**

v.

**PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1997.
Decided March 10, 1997.

Linda J. Laub, Harrisburg, for appellant.

Daniel Finnegan, Drexel Hill, for appellee.

Before FRIEDMAN and LEADBETTER, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

The Pennsylvania Higher Education Assistance Agency (PHEAA) appeals from an order of the Court of Common Pleas of Delaware County (trial court), dated December 18, 1995, directing that PHEAA take no further action against Lauren Finnegan (Finnegan) to collect on student loans upon which PHEAA alleged Finnegan was in default.

Lauren M. Loden (Finnegan's maiden name) obtained a school loan from Provident Bank on September 25, 1966 in the amount of $500.00; she obtained a second school loan from Provident Bank on August 24, 1967, also in the amount of $500.00. Both loans were guaranteed by PHEAA.

In 1984, PHEAA filed a Statement of Claim in its records against Finnegan alleging that the loans had not been repaid. Because PHEAA received no response from Finnegan, PHEAA entered an order of default against Finnegan in its records. Finnegan received a copy of this order on May 12, 1995. On May 26, 1995, in response to PHEAA's attempt to attach her wages, Finnegan filed a Petition for Review with the trial court in which she claimed that the loans had been repaid.

At the hearing, Finnegan testified that her mother repaid the loans in 1971 or 1972, after which Finnegan received no more statements from PHEAA indicating that she owed anything further. Indeed, Finnegan testified that she had never been contacted by PHEAA in any manner until she received a phone call from PHEAA in December 1994; moreover, she did not receive notice of her alleged default until May 12, 1995. Finnegan stated that she lived at the address listed on her loan papers until 1975 and that, after that time, her mother continued to live there and forward Finnegan's mail; however, Fin-

negan never received anything from PHEAA. Finally, Finnegan maintained that she never received any of the letters which PHEAA mailed to her new address under her maiden name of Lauren M. Loden, indicating that her daughter, Lauren L. Loden, may have received those letters instead.

Finnegan also presented the testimony of her mother, Edna Sylvester. Although acknowledging that she could not remember the specific details, Sylvester testified that she had repaid Finnegan's loans in either 1971 or 1972 because Finnegan was about to take a trip to Norway and Sylvester wanted to make certain that all of Finnegan's bills were paid.

PHEAA, on the other hand, claimed that Finnegan defaulted on the loans in 1968 and that it entered a default judgment on that claim during its July 26, 1984 board meeting. PHEAA also contended that Finnegan's Petition for Review, filed on May 26, 1995, was not timely filed because it was not filed within thirty. days of the entry of the default judgment, as required by Rule 1512(a)(1) of the Pennsylvania Rules of Appellate Procedure. PHEAA called as a witness Garrison Lebo, who explained the standard collection procedures used by PHEAA in collecting on defaulted student loans and who provided an overview regarding PHEAA's attempts to collect from Finnegan. Lebo indicated that PHEAA began its collection attempts in 1977, and that, until 1988, PHEAA sent all the letters by first-class mail to Finnegan's previous address, incorrectly addressed to Lauren Loden, rather than Lauren Finnegan.

The trial court credited the testimony of Finnegan and Sylvester and, while not specifically discrediting Lebo, found that his testimony consisted merely of ineffectual attempts to contact Finnegan and was void of any evidence connected with Finnegan's receipt of PHEAA's claim or the order of default. Thus, on the basis of the foregoing testimony, the trial court found that Finnegan's Petition for Review had been timely filed and that her loans had been repaid.

■■■ On appeal to this court,[1] PHEAA argues that the trial court erred in holding that Finnegan's Petition for Review was timely filed and in finding that Finnegan had established by a preponderance of the evidence that the debt in question had been satisfied.[2] We disagree. Because we believe that the trial court thoroughly analyzed these issues and correctly answered them in the affirmative, we affirm the trial court's order and adopt the well-reasoned opinion of Judge Joseph F. Battle in *Finnegan v. Pennsylvania Higher Education Assistance Agency*, Court of Common Pleas of Delaware County, Civil Division, No. 95–6670, filed May 17, 1996.[3]

---

1. Our scope of review of a trial court's decision is limited to determining whether the trial court abused its discretion, committed an error of law, or whether the decision is supported by substantial evidence. *Hammer v. Nikol*, 659 A.2d 617 (Pa.Cmwlth.1995).

2. PHEAA also argues that the trial court erred by conducting an evidentiary hearing and by applying the statute of limitations to a Commonwealth agency such as PHEAA; however, because PHEAA failed to raise these issues in its Statement of Matters Complained of on Appeal, these issues are waived. *See Lower Paxton Township, Board of Supervisors v. Okonieski*, 153 Pa. Cmwlth. 36, 620 A.2d 602 (1993).

3. In support of the trial court's analysis, we note our supreme court's discussion in *Carter v. Ridge Turnpike Co.*, 208 Pa. 565, 57 A. 988 (1904):

More than twenty years had elapsed before this equitable ejectment was instituted, and in it there can be no recovery unless the money to enforce the payment of which it was brought has not been paid. With a continuing right to collect the same, barred by no statute and defeated by no adverse possession, *there is, nevertheless, the presumption after twenty years from the time the right to the damages accrued, that they have been paid.* The rule that, after the lapse of twenty years, mortgages, judgments and every species of security for the payment of money are presumed to be paid is unbending, universal and invariable. It is applicable both at law and in equity, in the common pleas and the orphans' court.....

The contention of the appellants, sustained by the common pleas, is, that the land had been paid for. This would be so if twenty years—the period unbendingly fixed as raising a presumption of payment—had not passed before any steps· were taken against the appellee.... *What would not have been a burden on those before the twenty years, becomes so thereafter; and what would have been required of the defendant before that time is not called upon to prove after.*

*Id.* at 567–68, 57 A. at 988–89. (Emphasis added and citations omitted.)

## ORDER

AND NOW, this 10th day of March, 1997, the order of the Court of Common Pleas of Delaware County, dated December 18, 1995, at 95–6670, is affirmed.

## APPENDIX

In The Court Of Common Pleas
Of Delaware County,
Pennsylvania

Civil Action—Law

Lauren Loden-Finnegan

vs.

Pennsylvania Higher Education
Assistance Agency

No. 95-6670.

May 17, 1996.

Daniel Finnegan, Esquire, 111 North Olive Street, Media, PA 19063.

Linda J. Laub, Esquire, 1200 N. Seventh Street, Harrisburg, PA 17120-1444.

## *OPINION*

BATTLE, Judge.

Lauren Loden–Finnegan obtained a school loan from Provident Bank on September 25, 1966 in the amount of five-hundred dollars. She obtained a second school loan from Provident bank on August 24, 1967, also in the amount of five-hundred dollars. The school loans were backed by the Pennsylvania Higher Education Assistance Agency (PHEAA). PHEAA believes that the loans were never paid and, therefore, attempted to attach Mrs. Finnegan's wages on or about January 10, 1995. PHEAA is of the opinion that the amount now due on the two $500.00 loans is in excess of $2,900.00.

When Mrs. Finnegan received the notice that her wages were to be attached, she filed a petition for review in the Court of Common Pleas of Delaware County, PA. PHEAA filed preliminary objections to the petition for review alleging that jurisdiction was in

Dauphin County, PA and not in Delaware County. By an order dated October 31, 1995, the Honorable Joseph P. Cronin, Jr., denied the preliminary objections. Judge Cronin's order stated, in part, that the preliminary objections were denied because "the Pennsylvania Rules of Civil Procedure do not permit preliminary objections to be filed to a petition, as a petition is not a pleading defined by Pa.Civ.P. 1017...." Thereafter, a hearing on the merits was heard before this Court and an order was entered on December 18, 1995 which reads as follows:

AND NOW, to wit this 18th day of December, 1995, it is hereby ORDERED that the Pennsylvania Higher Education Assistance Agency shall take no further action against Lauren Finnegan to collect money with regard to student loan account Number 196–36–9376, the Court having found that the said loans have been repaid.

Thereafter, PHEAA filed an appeal to the Commonwealth Court of Pennsylvania, thus necessitating this opinion.

PHEAA's statement of matters complained of on appeal raises three issues. The issues are as follows:

1. Should venue for this action rightfully be in Dauphin County and not Delaware County?

2. Did the Court of Common Pleas lack the requisite jurisdiction to hear this case when the petition for review was filed by the petitioner beyond the thirty day period provided in the Pennsylvania Rules of Appellate Procedure Section 1512(a)(1)?

3. Did the petitioner fail to carry her burden of proof that the student loan was satisfied?

### *VENUE*

PHEAA argues that venue for this petition was properly within Dauphin County and not Delaware County. In support of its position, the PHEAA references 24 P.S. § 5105.9 which provides that "venue for all legal ac-

---

We believe that the presumption that a debt has been paid when no action has been taken on a claim for over twenty years applies to this case

and reinforces the decision of the trial court here.

tions in which the agency is a party shall be proper in Dauphin County and, in the discretion of the agency, in any other county authorized by law." Mrs. Finnegan has argued that venue lies within Delaware County pursuant to 24 P.S. § 5104.3(h)(4) which provides, in relevant part, that "any person aggrieved by an order of default entered by the Board of Directors may appeal such order to the Court of Common Pleas of the district in which the borrower resides or the Court of Common Pleas of Dauphin County."

In the case at bar, Mrs. Finnegan is aggrieved by an order of default entered by the Board of Directors of PHEAA. Therefore, since Mrs. Finnegan resides in Delaware County, venue is proper in Delaware County.

While PHEAA has argued that the Court of Common Pleas does not have jurisdiction, this Court believes that PHEAA is confused between the term *jurisdiction* and the term *venue*. The Pennsylvania law encyclopedia distinguishes venue from jurisdiction as follows:

> Venue is the place in which a particular action is to be brought and determined, and is a matter for the convenience of the litigants. Jurisdiction, on the other hand, refers to the competency of a Court to determine controversies of the general class to which a case presented for its consideration belongs, and to bind the parties to the litigation by its adjudication. Accordingly, then, venue is distinguished from jurisdiction in that jurisdiction connotes the power to decide a case on its merits, while venue connotes locality, that is, the place where the action should be heard.

P.L.E. Venues § 1. The section cited by PHEAA in support of its argument, 24 P.S. § 5105.9, specifically references venue and not jurisdiction. There has not been any argument that Delaware County was an inconvenient forum for this case. Therefore, PHEAA's argument that Delaware County does not have venue or jurisdiction must fail.

### WAS THE PETITION FOR REVIEW UNTIMELY FILED?

PHEAA argues that the petition for review was untimely filed. In support of

its position, the PHEAA references Pa. R.App.P. § 1512(a)(1) which provides that a petition for review of a quasijudicial order shall be filed with the prothonotary within thirty days after the entry of the order. In the case at bar, the petitioner, Mrs. Finnegan, alleges that she first received notice of the order of default on May 12, 1995 when a copy of the order for default was faxed to her by the PHEAA. She filed her petition for review on May 26, 1995, well within the thirty day time period. PHEAA argues that the order of default was actually issued by the agency several years ago. However, PHEAA did not present any evidence that notice of the order of default was served on Mrs. Finnegan or that notice of any judgment was served upon her. Further, the PHEAA did not present any evidence that its statement of claim was served upon Mrs. Finnegan. As previously indicated, PHEAA's only witness at the time of the hearing in this matter stated that Mrs. Finnegan's loans defaulted on October 28, 1968. He also stated that he had no personal knowledge of any contacts between PHEAA and Mrs. Finnegan and, further, that his records of attempted contacts with Mrs. Finnegan did not start until 1977. Therefore, if the loan defaulted in 1968, there was apparently nine years before PHEAA can present any evidence of an attempted contact with Mrs. Finnegan. In any event, there has been no proof of notice that the order of default was ever served upon Mrs. Finnegan. Further, the only records that the PHEAA presented to the Court indicated that certain contacts were attempted to be made with Mrs. Finnegan by regular mail. While there is a presumption of receipt in due course of something that is mailed, the party against whom the judgment or other adverse action has been taken may rebut the presumption of service. *See, Franklin Interiors v. Browns Lane,* 227 Pa.Super. 252, 256 n. 2, 323 A.2d 226 (1974).

It should also be noted that the attempts which PHEAA apparently made to contact Mrs. Finnegan by first class mail (none of these attempts indicated they were attempts to provide her with the service of the order of default or of the original claim), were

addressed to Mrs. Finnegan's maiden name being Lauren Loden which Mrs. Finnegan has not used in twenty years. That name is used, however, by Mrs. Finnegan's daughter. Therefore, there presents a possibility that any such mail may have been received by Mrs. Finnegan's daughter and not by Mrs. Finnegan. Further, PHEAA used an improper address for Mrs. Finnegan between 1977 and 1988. The address used by PHEAA was Mrs. Finnegan's former address. While PHEAA argues that Mrs. Finnegan should have kept PHEAA informed of her address at all times, the testimony presented by Mrs. Finnegan was that these loans had been paid prior to 1977. Therefore, there would have been no reason for Mrs. Finnegan to keep PHEAA advised as to her address. While the address which PHEAA used in 1984 and 1988 was a correct address, again, the mail was addressed to Lauren Loden, which is Mrs. Finnegan's daughter, since Mrs. Finnegan has not used the last name of Loden in excess of twenty years. Again, Mrs. Finnegan testified that she never received any such mail and the Department could not provide any proof of service of the mail nor did the witness testifying on behalf of the Department have any personal knowledge that the alleged mail was actually mailed. Further, the PHEAA did not provide this Court with copies of any documents allegedly mailed to Mrs. Finnegan. The only thing which PHEAA provided to this Court was a copy of a record of attempted contacts with Mrs. Finnegan. Therefore, this case is totally void of any evidence that Mrs. Finnegan ever received notice of the claim in this matter or of the order of default. Without any such evidence being presented, and with Mrs. Finnegan specifically denying the receipt of any such notices, the period for filing the petition for review did not begin until Mrs. Finnegan received the order of default, which she alleges to have occurred on May 12, 1995. This Court finds that the petition for review was timely filed. This Court specifically finds that Mrs. Finnegan was a credible witness.

## DID THE PETITIONER PROVE THAT THE LOANS HAD BEEN PAID?

■ Mrs. Finnegan's mother, Edna Sylvester, testified that she had paid the subject loans for Mrs. Finnegan in 1971 or 1972. Mrs. Finnegan was about to take a trip to Norway. Mrs. Sylvester wanted to make certain that all of Mrs. Finnegan's bills were paid prior to Mrs. Finnegan taking the trip. Therefore, Mrs. Sylvester stated that she borrowed money from her son and she used that money to pay-off these loans. While PHEAA argues that Mrs. Sylvester's testimony was not specific because she could not remember certain details as to where she paid the loans, this Court finds that Mrs. Sylvester was a credible witness and that the passing of approximately twenty-three years since the loans were paid is sufficient justification for the inability to remember addresses to which loan payments were sent or other certain specifics regarding the payment of these loans. This Court specifically finds that the loans were paid upon the credible testimony of Edna Sylvester.

■ This Court also believes that the doctrine of laches is applicable in this case. While there is not a statute of limitations on student loans, PHEAA did not act responsibly. Mrs. Finnegan testified that she lived at the address which was on her loan papers and which PHEAA had for her until 1975 and, after her mother paid the loans she did not receive any more statements that there were any amounts due. Further, after Mrs. Finnegan moved from her original address her mother continued to reside there for a period of years. Mrs. Finnegan testified that she received mail from her mother, but not any statements from PHEAA regarding this loan. Again, this court finds Mrs. Finnegan's testimony to be credible. While Mrs. Finnegan maintained her Social Security number and her proper address with the Social Security Administration, maintained a voter registration, maintained a valid driver's license, and paid federal and state taxes, PHEAA argues that they could not find Mrs. Finnegan after she moved. As was also previously noted, while PHEAA indicates that the loan defaulted in 1968, PHEAA does not have any records of any attempted con-

tacts with Mrs. Finnegan from 1968 through 1977. The first actual contact that PHEAA had with Mrs. Finnegan was by telephone at Mrs. Finnegan's work in December of 1994. Mrs. Finnegan described the call as an abusive call and she told the caller not to contact her at work again. Thereafter, she did not receive any further contacts from PHEAA until she received a fax from PHEAA in May of 1995. There was no testimony as to the substance of the December, 1994 telephone call.

In the case at bar, the Department has waited approximately twenty-seven years from the date that they alleged that the loan defaulted until the time they attempted to attach Mrs. Finnegan's wages. Further, the Department does not have any record of any contacts or attempts of contact with Mrs. Finnegan from 1968 until 1977. In the interim, Mrs. Sylvester, who paid off the subject loans, no longer has records of the money order which she used to pay off the loans. Further, her son from whom she borrowed the money to pay off the loans, has died and, therefore, was unavailable to testify at the time of trial. Certainly, it is reasonable that memories fade and records disappear over twenty-seven years. The Pennsylvania Supreme Court has held that where a law suit has been commenced and the plaintiff has not taken any further action to move the case forward for a period of nine years, the law suit has been abandoned pursuant to the doctrine of laches. *See, Ulakovic v. Metropolitan Life Insurance Co.,* 339 Pa. 571, 16 A.2d 41 (1940). In the case at bar, PHEAA alleges that the petitioner defaulted on her loans in 1968, however, PHEAA did not even prepare a statement of claim under 24 P.S. § 5104.3(c) until May 31, 1984. PHEAA has not presented any proof that the claim was served upon Mrs. Finnegan or that an order of default was served upon her. While PHEAA indicates that certain contacts were attempted to be made, when Mrs. Finnegan had a Social Security card, had a driver's license, was registered to vote, and filed state and federal income tax returns, this Court does not believe that PHEAA used any due diligence in attempting to make such con-

tacts, especially when Mrs. Finnegan's mother continued to reside in the home which was listed as Mrs. Finnegan's address on the loan papers for a period of years after the default allegedly occurred. When the statement of claim was allegedly, sent to Mrs. Finnegan, Mrs. Finnegan's mother had moved from the address which PHEAA had used. Certainly, it is reasonable to expect that people move when the statement of claim was not even prepared for sixteen years after the alleged default. The doctrine of laches has to bar PHEAA's attempts to collect on a loan which it alleges was defaulted upon twenty-seven years ago.

### *ORDER*

AND NOW, THIS 18th day of December, 1995 it is hereby ORDERED that the Pennsylvania Higher Education Assistance Agency shall take no further action against Lauren Finnegan to collect money with regard to student loan account number 196–36–9376, the court having found that said loans have been repaid.